UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>AUGUSTINE OSEMWEGIE, )<br>)<br>Defendant )<br> | Criminal No. 22-10081-RWZ |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Augustine Osemwegie.

The defendant was caught on tape agreeing to launder thousands of dollars of what he believed to be fraud proceeds, in exchange for a fee. Unbeknownst to him, the defendant was being recorded by a confidential human source, in a sting operation executed by the FBI, pursuant to information from a cooperating witness indicating that the defendant frequently laundered fraud proceeds through his used-car dealership. The defendant went on to execute the laundering transaction, take his $3,000 fee, and attempt to cover-up the foreign money transfer as a legitimate purchase of a used luxury vehicle. Against the backdrop of this evidence, the defendant waived indictment and pleaded guilty to a one count information charging him with money laundering. The defendant faces a Guidelines range of at least 10 to 16 months in prison, and for his serious criminal conduct, the government submits that a term of incarceration is warranted to punish the defendant, serve general and specific deterrence, promote respect for the law, and satisfy other sentencing interests under 18 U.S.C. § 3553(a).

Nevertheless, the government acknowledges that the defendant has fully (and swiftly) accepted responsibility for his conduct, has no criminal history, is the primary caregiver for at least one minor child (and three older children), and otherwise appears to be a productive member of the community. Accordingly, the government respectfully submits that the following sentence is fair, just, and sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a): 5 months of incarceration; followed by 12 months of supervised release, to include the first 5 months in home detention; a $5,500 fine; a $100 mandatory special assessment; and an agreed-upon forfeiture money judgment of $3,000 (*see* Dkt. 36).

I. **Overview of the Offense Conduct**

In 2019, the defendant founded Ejad Auto Sales, Inc. ("Ejad"), a Massachusetts used car dealer and auto export business. The defendant was the president and director of Ejad. PSR ¶ 9. Based on, among other evidence, information from a cooperating witness ("CW-1") who has pled guilty to conspiracy to commit wire fraud, the defendant used his business, Ejad, as a means of laundering proceeds of various internet fraud schemes, including romance scams and unemployment fraud. *Id.* ¶¶ 10-11. According to CW-1, he brought cash and money orders to the defendant, which were the proceeds of fraud, with the goal of laundering the proceeds and sending the money to co-conspirators located abroad, principally in Nigeria. *Id.* The defendant knew that the money that CW-1 brought him was the proceeds of fraud. *Id.*

The defendant took a percentage of the money as his fee for money laundering, and then used the remaining funds to buy used cars at auto auctions in New England on behalf of Ejad. *Id.* Using Ejad as a front for laundering the fraud proceeds, the defendant then arranged for the cars to be shipped to Nigeria to CW-1's co-conspirators, where they were sold for Nigerian currency.

*Id.* The purpose of this scheme was to avoid detection by law enforcement and disguise the proceeds of the fraud as legitimate auto sales and exports. *Id.*

In September 2020, CW-1—then acting at the direction of the FBI—placed a recorded call to the defendant in order to introduce the defendant to a Confidential Human Source ("CHS"). CW-1 represented to the defendant that the CHS was a "friend" seeking to launder fraud proceeds through Ejad's business. *Id.* ¶ 17. During the same month, the defendant and the CHS then had various recorded phone conversations about their plan to launder fraud proceeds through Ejad. *Id.* ¶¶ 18-20. For example, on September 6, 2020, the CHS told the defendant that he would bring him several thousand dollars in cash to launder through Ejad and send abroad. *Id.* ¶ 19. The CHS told the defendant, in sum and substance, that the money was the proceeds of fraud. *Id.* During later recorded conversations, the defendant negotiated his percentage fee with the CHS. *Id.* ¶ 20.

On September 17, 2020, the defendant and the CHS met at a restaurant in Peabody to complete the money laundering deal, as part of a sting operation arranged by the FBI. *Id.* ¶ 21. The meeting was recorded by the CHS and surveilled by FBI agents. *Id.* During the meeting, the defendant accepted $13,000 in cash in an envelope from the CHS. *Id.* ¶¶ 21-22. That day, the CHS told the defendant that the money was the proceeds of unemployment fraud, and that he wanted to launder the funds through Ejad and transfer it to a bank account in Canada (which had been set-up by the FBI). *Id.* ¶ 21. The defendant agreed to launder the $10,000, in exchange for a $3,000 fee (the remainder of the $13,000 in cash). *Id.* ¶ 23.

The next day, the defendant went to a TD Bank in Massachusetts, where he deposited the cash that the CHS had given him into a bank account in the name of Ejad. *Id.* ¶¶ 24-26. The defendant was captured by bank surveillance conducting this transaction. *Id.* ¶ 26.

Three days later, on September 21, 2020, the defendant went to a different TD Bank in Massachusetts, where he executed a $10,000 wire transfer from the Ejad bank account to the bank account in Canada. *Id.* ¶¶ 25-26. The defendant falsely listed the purpose of the wire as funds to purchase a used luxury vehicle. *Id.* ¶ 25. In later text messages sent via WhatsApp, the defendant and the CHS discussed, in coded language, their plans to launder additional funds through Ejad. *Id.* ¶ 27.

## II.     The Applicable Sentencing Guidelines

Although the government is bound by the Guidelines range of 12 to 18 months stipulated to in the parties' plea agreement (PSR ¶ 3), the government submits that it has no objection to the calculation of the offense level in the PSR (*id.* ¶¶ 31-40), which results in an applicable Guidelines range of 10 to 16 months. *Id.* ¶ 71. Because the defendant's Guidelines range is in Zone C of the Sentencing Table, the Court may impose a Guidelines sentence that includes some term of home detention, as long as "at least one-half of the minimum term is satisfied by imprisonment." *Id.*; *see also* U.S.S.G. § 5C1.1(d).

## III.    Sentencing Recommendation

The government respectfully submits that a term of incarceration is necessary to adequately punish the defendant, who committed a serious crime in a fairly sophisticated manner, and in doing so, tried to cover his tracks by speaking in code and using his business as a front. *See* 18 U.S.C. § 3553(a)(1) (providing that a sentence must account for the nature and circumstances of the offense); *United States v. Lucena-Rivera*, 750 F.3d 43, 54 (1st Cir. 2014) (rejecting the minimization of a money launderer as merely a "money man" and noting that money laundering must be adequately punished because it is an "integral part of" underlying criminal activity, like fraud or drug-trafficking). The Sentencing Commission recognizes as much by imposing base

offense levels for money laundering that are more severe than ones for the underlying fraud. *Compare* U.S.S.G. § 2S1.1, *with id.* § 2B1.1.

A sentence of incarceration is also necessary to promote respect for the law. *See, e.g., United States v. Matos*, 611 F.3d 31, 37 & n.7 (1st Cir. 2010) (affirming 84-month sentence of incarceration in money laundering case as necessary to, in part, "promote respect for the law"). Finally, the interests of specific and general deterrence would be disserved by a non-incarceration sentence, particularly in a case where, as here, the defendant bragged that he previously laundered far more money than the $10,000 paid by the CHS, and his company's financial records support that incriminating concession. PSR ¶¶ 21(c), 13-16; *see also, e.g., United States v. Saccoccia*, 10 F.4th 1, 9 (1st Cir. 2021) (affirming life sentence for money launderer and noting that a sentence reduction would "undercut the policy of promoting deterrence").

Nevertheless, the government submits that while a Guidelines sentence is appropriate here (and there do not appear to be any compelling justifications for a downward variance), the Court should consider a term of home detention, as a substitute for up to half of the defendant's term of incarceration. *See* PSR ¶ 71. Because the defendant is the primary caregiver for a minor child, has no criminal history, and appears to be an employed, productive member of his community setting aside the criminal conduct at issue in this case, the government submits that a term of home detention, in addition to a prison term, will serve as an adequate substitute to a longer period of incarceration.

Finally, the government notes that a sentence of 5 months of incarceration here is consistent with similar sentences this Court has imposed in money laundering cases, and a non-custodial sentence here would raise unwarranted sentencing disparities. *See United States v. Iyalekhue*, 20-cr-10208-RWZ, Dkt. 53 (refusing to vary downward in money laundering and fraud case and

5

imposing bottom-of-Guidelines 63-month term of incarceration, even though defendant faced deportation to Africa after completion of sentence); *see also id.*, Dkt. 63 (denying defendant's motion for compassionate release).

## IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to: a 5-month term of incarceration; followed by a 12-month term of supervised release, to include the first 5 months served in home confinement; a bottom-of-Guidelines $5,500 fine; a forfeiture money judgment of $3,000;[1] and a $100 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Ian J. Stearns*
     IAN J. STEARNS
     Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

By:   */s/ Ian J. Stearns*
     IAN J. STEARNS
     Assistant United States Attorney

---

[1] The parties have stipulated to the forfeiture amount in the plea agreement, and the government requests that the Court grant its unopposed motion for an entry of a $3,000 money judgment. Dkt. 36.